Good morning, Your Honor. Lee Frank, Weidman Frank, and Yoon for the appellant in this matter, Paul Pesqueira. All right. How long do you want to reserve for rebuttal? Three minutes, please. All right. Thank you. I think the two main points I want to discuss in this appeal is whether or not he was acting as a private citizen versus in his official capacity when he initiated the complaint against another police officer. And interrelated to that, but a separate point, is did we establish a genuine issue of material fact on that subject? Because this was a summary judgment case. So as long as the plaintiff was able to establish a genuine issue of material fact, the jury should then decide whether or not, you know, that should go to the jury to decide that factual issue, whether he was acting in his official capacity or in a private citizen, as 1983 cases define those terms. And I think the district court, even in its order, recognized there was a clear dispute in the evidence. Basically, we were saying, and we had evidence to say that it was acting as a private citizen. The city had evidence and was arguing that it wasn't his official duties. Well, let me ask you this. I mean, how can we distinguish Captain Pescara's reporting Captain Ortega's alleged misconduct from the internal reports that were in Freitag v. Ayers, which is our Ninth Circuit press event here, where we held that we're not constitutionally protected under Garcetti? Well, I think part of it is the mechanism in Pescara. The mechanism in this case is that there was a federal consent decree placed on the LAPD, and Pescara's initiation of the complaint against Captain Ortega was premised on that. And that's an external mechanism that's placed on the LAPD that is not internal. It's not just a solely internal issue. And, in fact, that's the only reason. Well, why does that make a difference, then? I mean, the thing that concerned me was he made this complaint on an LAPD internal form of somebody who was his subordinate that he was supervising, and then he signs it as the commanding officer. The complaint is from the department. So everything is pointing to the official position and his role in the official complaint form. So how does it make a difference why he determined that it was misconduct? Well, I'm going to answer your question, I hope, the opposite, which is, looking at Garcetti, those factors don't matter. The fact that he submitted this complaint internally, and the fact that it was a- Well, how can you say that about Garcetti? I mean, Garcetti says employers have heightened interest in controlling speech made by an employee in his or her professional capacity. I mean, isn't that official communications have official consequences? Isn't that exactly what this was, official speech in his official capacity? What I meant by your Honor, and I shouldn't say it doesn't matter because Garcetti says it's not dispositive, the fact that he's talking, the fact that he's using internal forms, and the fact that he's talking about a subject related to his employment, is not dispositive on the issue whether it was under Garcetti as to whether it was a public, an official duties act, or a private citizen. But the only example they gave was to a case where a teacher is yelling at her principal for discriminatory hiring, she believes. I mean, that has no relevance to this, correct? I mean, this was, he identified supposed misconduct in a subordinate, and reported it on an official form. That's true, Your Honor, but I mean, Garcetti must have had some intent in the case when they said those types of issues aren't dispositive. They gave one example, but I think you've seen other examples in follow-up cases. I think in the Robinson v. York case, there was, it was considered protected speech. And then even in the Maribel case, which follows Freetag, there was definitely protected speech even related to the engineer. And finally, in Freetag, they found that some of the issues were protected speech. But he didn't do anything, your client didn't do anything like she did. I mean, she sent a letter to the senator, and they said the letter to the senator is something a private citizen would do. This was an official complaint form on an official form document sent as the commanding officer from the department. Right. So that doesn't resemble, that resembles what in Freetag we found was not protected, was employee speech. I'm sorry to cut you off, Your Honor. I think there's a distinction to be made. It's not, in this case, it's not just the act of filling out the form. It's the act of initiating the complaint against the officer. If you see on the form, the form actually has various boxes on who's initiating the complaint. First one, the public. So a public person could initiate a complaint against a police officer. Next, the department, another law enforcement agency, a third party. Anyone could initiate this complaint against Captain Ortega under the consent decree. It could be Captain Pescara, it could be somebody off the street. In fact, he didn't check the public form. Right. He said it was from the department. Right, because he's not a member of the public. But if he were acting as a private person, shouldn't he have done that? Shouldn't he have said, I'm doing this as a member of the public, not in my official role as commanding officer, which is how he signed it? I'm having a lot of trouble with that point. Yeah, you know, if he could anticipate what Garcetti was going to say, and remember all this happened before Garcetti came down, maybe, but I don't think that would be a distinction that Garcetti and that lineage would rely on, the fact that he checked the department box versus the public. Is this type of speech something that you would find citizens regularly doing? Well, aside from that point, I'm concerned that if we were to accept your point, that everything that goes on in a police department would be a matter of public concern. Well, certainly not. I mean, that can't be right. Yeah, I would agree. That can't be right. But police officers' work is a little more, you know, I mean the public seems to get their nose in it a little bit more than, you know, for probably legitimate reasons than, say, a private business or something. But obviously running a police department, everything that goes on can't be a public concern, even though you could broaden it to that point. Absolutely, Your Honor. And I think that's already built in in the five-step process that the N Court delineates for the Ninth Circuit on how to analyze his 1983 claims. First prong has to be a matter of public concern. I'm not sure that everything is, but then even if I assume that here, I get hung up on what Judge Acuda is talking about, that he was not acting as a private person. Right. And I think that that's where everybody is hung up on the case is that second prong. Did he do it in his official capacity versus as a private citizen? But I think the interpretation of what those terms mean is a little different than what, you know, what the plain sense of it means. You know, to me, the plain sense would just be, you know, if he was at his job and he filled out the form, that would be an official duty. But if he was at his home and he sent it to somebody else, that would be as a private citizen. But that's not what the cases said. The cases say it's not important. It's not the positive on where you do the form and what you're talking about. What's this? What's what's this positive? Is it part of the essence of your job to do this? And so, for example, in Garcetti, I think it's a clear example. It was agreed upon fact. I think it's a clear example. As a district attorney, it's the essence of his job in each case to determine whether to prosecute or not. And so if we allow him to have a 1983 claim, basically any time he's demoted, he could file a 1983 claim and say, look, it's because I didn't prosecute this case or because I prosecuted this case. So the essence of his job will always require that. So if the prosecutor, besides his prosecutorial decisions, fires people on a discriminatory basis or there's some other action, you're saying that's not the essence of his job, so that's a private citizen? I mean, here the essence of your client's job was as a supervisor. That was part of it. So why isn't his decisions or his complaints on a supervisorial role part of the essence of his job? Sure. Well, the essence of his job is to run the precinct, and mainly that involves delegating manpower and deciding the resources. Was he a supervisor? Oh, clearly he's a supervisor, and he has supervisory jobs, duties. So wasn't one of them supervising people beneath who were his subordinates and indicating and correcting their behavior? I'm having trouble understanding why that wasn't part of his job description. Oh, that is. I mean, I think that is part of his job, to supervise, to make disciplinary decisions, but it's not to initiate or investigate a complaint of police misconduct, and that's what we're talking about here. Don't police officers get disciplined if they see misconduct and they don't report it? Well, I mean, that's the second part of our argument, which is, in this particular case, not only are we arguing it's not part of his duties, but the chief of police is saying they didn't want him to file this complaint. They didn't want him to initiate the complaint. Does that matter under Freetog? Because in Freetog, it was clear that her supervisors had quit reporting on this misconduct of the prisoners, were just going to round file your complaints, and yet the court still held that was reporting done as an employee, unprotected speech. I think it does, and I think the dissent in Hubbard, I didn't see the majority rely on any distinction in Hubbard. We can't decide cases based on dissents. I understand that, but I don't think the majority. I mean, I would like that, because I've written a lot of dissents, but it just doesn't work that way. I mean, I guess to answer your question, here's the flip side of the concern, is where is a police officer that sees misconduct, if he complains about that, that's something society wants to protect. We want to protect whistleblowers. We want to protect police officers that see misconduct. There should be a remedy if he is then demoted or subject to nationalization. Well, he's a supervisor, right? So it's not really whistleblowing, because the whistleblower is someone who says, there's stuff going on in my department, my supervisors are corrupt, whatever it is. But if your job is to supervise and to make sure things are doing, that are going correctly and are compliant, how can that be whistleblowing? You know, frankly, Anna, I would just have to disagree. I think that any position in a business or a police station, they could whistleblow. You can whistleblow on somebody under you. Well, except the way you do it, it's got to have some bearing. I mean, I know where I live, there was a situation where a lieutenant sent in an anonymous letter to the editor saying that the deputy chief wasn't reporting a child molester under mandatory reporting, someone that went to his church that he knew about and all of that. Well, that, I mean, that is not using, that's not going in and filing on a form, signing your name as commander and all of that. I mean, that, and then they fired him. And so then there was a whole brouhaha about that. And, but that arguably, those are much better facts for whistleblowing than what you're talking about. I mean, I would like those facts if I had that case. Yeah. All right. Well, I think we've gone into over, we're not in overtime, but I know you wanted to save some time for rebuttal. So why don't we hear from the appellee and then let you have your rebuttal time. Good morning. Good morning. Is there any particular issue you'd like me to address? Your name. My name is Claudia McGee-Henry, senior assistant city attorney. I'm representing the Los Angeles Police Department in the City of Los Angeles and the individual defendant. Is this an issue of public concern? I realize that that's a question of law, but it's not clear to me that it really is. If you look at the complaint, and that's the complaint that was filed by the Hollenbeck commanding officer, Captain Pescara, it's clear that there were two issues here. You had first the citizen complaint against a Hollenbeck desk officer. That citizen filed that complaint. That information was brought to the attention of a lieutenant in the Hollenbeck division who was under the supervision of Captain Pescara. That officer gave the citizen a complaint form. The citizen filled out that complaint form. One of the lieutenants thought that the complaint form should be signed by Captain Ortega. This is Captain 1, Ortega. It was never signed by Captain Ortega. Captain Pescara conducted an investigation, and in his complaint form he indicates that he presented Captain Ortega, who's Captain 1, with a copy of that citizen complaint form. So if I were to summarize your position, it's sort of iffy whether this is an issue of public concern, but where you're very firm is he was not acting as a private citizen? Oh, correct. But with respect to the citizen complaint against the desk officer, arguably that could be an issue of public concern. You have a citizen, someone outside the department, complaining about the conduct of the desk officer. But it appears that that issue was being handled, that that issue seems to have gone away. Captain Pescara doesn't say that that issue wasn't addressed. When Captain Pescara presented the complaint form to Captain Ortega, Captain 1, she said, I've never seen it before. He says he doesn't believe her, so he filed the complaint against her. At that point, you have a supervisor and someone who's being supervised, a Captain 3, who's the commanding officer, and his subordinate who have a dispute. He files a complaint against her. She files a complaint against him. Chief Bratton observed that Captain 3, Pescara, perhaps you should have mentored her more. Captain Pescara says he did mentor her. He did explain to her what her duties were. So are these all issues of public concern? The point I'm making is no. That dispute between Captain Pescara and Ortega I don't think is a matter of public concern. That happens all the time where you have employees, you have employers and subordinates. But you can see, though, that a police department's a little dicier in determining what's a public concern as opposed to, say, like a private. I do, but in this case, Captain Pescara doesn't draw a connection, doesn't explain how that dispute between he and Ortega resolved itself with respect to what arguably was a matter of public concern. An employee who says the form didn't come to me, that's not a matter of public concern if she's telling the truth. It just becomes a routine that happens if you even let it rise to that level. It happens. People don't get forms. People don't get files. People don't know where briefs are. People don't know where records are. That happens all the time. To elevate that into a matter of public concern, I think, is wrong. So I wouldn't concede that this entire dispute is a matter of public concern. Because there could be arguably other things that go on at a police department, maybe that now they're all facing these staffing issues and there's crime in certain areas and decisions that are made not to maybe patrol certain areas and so the criminals run rampant. Correct. Okay. That being said, Judge Ikuda, did you have any questions? Thank you. I don't. Thank you. All right. You have a couple of minutes for rebuttal. Thanks, Your Honor. The second, what I really wanted to start with, I guess I didn't get there, is We have two minutes to get there and done. I read the Desmond case, which I cited, to say basically that And it's a very similar fact pattern. Police officer alleges misconduct. They say it's part of his job. He says, no, it's not. And there's a code of silence. And that court says, look, the jury's got to decide that. It's not for us as a matter of law to determine or it's not for us to determine. And that is a 2008 Ninth Circuit case. And that's our main point. Look, there's a genuine dispute as to whether it's part of his job or not. And that should go to the jury to decide. And maybe they decide it is part of his official duties And maybe they decide it's not. But the jury is the one that should decide that. And there's a clear dispute. The district court recognized there was a dispute between the parties as to whether it was or not. And then decided that it wasn't going to let it go to the jury. That's the error in the summary judgment, is that there was a genuine dispute that should go to the jury. And I think that's clear. And that's also the Posey case. Essentially, you're saying that Chief Bratton's indication that Captain Piscara was demoted because he failed to mentor Captain Ortega, was there was a materialistic dispute on that issue. Yeah, because that wasn't part of his actual duties because Chief Bratton is saying he shouldn't have done it. He shouldn't have filed that complaint. He should have mentored her. And so how could filing that complaint be part of his official duties if the chief of police is saying that's not what he should have done? That can't be part of his duty. And then secondly, I mean, the form is clear. I mean, I think of allegations of police misconduct typically coming from private citizens. That form allows the public or the department or other people to complain about misconduct. And I mean, Piscara, Captain Piscara was acting as anyone off the street could have done. He had the same obligations and rights under the consent decree to make that allegation. And that's why it's a matter of he was acting as a private citizen because any private citizen could have done what he did versus the official duties where no private citizen could have done that. All right. Your time has expired. Thank you both for your argument. This matter will stand submitted and court is in adjournment until tomorrow at 9 a.m. Thank you. Thank you.
judges: Rymer, Callahan, Ikuta